May it please the court, Davina Chen on behalf of the appellant John Leon Noster, I'd like to reserve two minutes for rebuttal. Mr. Noster raised two legal issues in his appeal. The first was the legality of the search which led to his arrest and conviction, and the second was the legality of his sentence. I'd like to focus today on the search issue and specifically on the issue of standing and the propriety of the stolen vehicle report. I think that's a good evaluation. I think that it's well briefed on the, I think you both, well, of course you can say what you want on the sentencing, but I think the search is obviously the more interesting issue here. Thank you, Your Honor. The question whether an individual who purchases a vehicle with financing lies on the application but makes a bona fide down payment, seven subsequent payments, but then defaults on his payments, whether that person loses a reasonable expectation of privacy is a question of first impression in this circuit. And I would submit, given the massive mortgage crisis that this country is facing, it's a question of immense importance to the privacy rights of Americans. Well, let me ask you to focus a little more broadly. Obviously, standing is the issue, but let me, but there's a subjective factor in this involved, and I think you can't ignore certain other facts when we analyze this. And we do, we've got a pickup, we've got a camper, and I think there were six motorcycles that are facts that are all part of this. And the pickup, you've stated what the situation is about the pickup. The camper also was something that was bought, and there was a situation of that not being paid for. Then there were six motorcycles that he wrote a check for that then didn't clear the bank. And also, factually, you have that they were trying to collect on this, and I believe it's been a year since, a year of missed payments or something along those lines. The plate's been taken off, and it appears to be some element of secretive, being secretive about it. So, I mean, all of those, you know, how would all of those things factor into his subjective expectation of privacy as well? I agree that the issue of the subjective expectation of privacy wasn't fully explored below, because both of the parties focused on the reasonableness of that expectation. But what we have here is an individual who purchased a truck, made payments on the truck, owned that truck, and was, in fact, at the time of the search, living out of that truck. And so, regardless of the question of whether it could have been repossessed by GMAC, he had a reasonable expectation that the government would not invade that space. And that is the relevant inquiry for Fourth Amendment purposes, not whether somebody could have repossessed that vehicle. And, in fact, one would say that he should have expected that GMAC would attempt to repossess that vehicle. We also have the little wrinkle, too, of, obviously, this had been entered as stolen. Yes. You know, when they offered, you know, the officers. So, I'm going to say that maybe we wouldn't disagree if it were classically, if the officers find a stolen vehicle, you know, if it's in a stolen vehicle. And I know that you're contesting whether this was stolen or not. But let's assume if it were just the classic situation of a stolen vehicle, that would be a whole other case than what we have here. But now we've got a case pending in front of the U.S. Supreme Court where I think that gets into if the officers relied on what turns out to be erroneous information from another agency and the exclusionary rule, how that applies. I think it's Herring. Yes, Your Honor. I'm familiar with that case. Do you think that is that, should we wait to hear what Herring has to say before we decide this case? I think that Herring goes only to the question of probable cause. It doesn't go to the issue of standing. And I looked at the briefs in Herring, and it's clear in Herring that what we talk about is an inadvertent placement of, or an inadvertent provision of information to other officers that there was a warrant outstanding. But the issue, the Herring issue, like this one, poses the question whether there is somehow the imputation of knowledge on the part of one officer to other officers and whether there's a difference when that's involved in contrast, for example, with Leon, where you have an intervening party that's not involved in law enforcement. And wouldn't Herring, in terms of who knows what the Supreme Court's going to say, but isn't it possible that Herring will cast some light on the question whether you liken the situation of law enforcement person on the issue of whether it's stolen to the contrary rule, the good faith exception that's created by Leon? I think it is possible. I think that the only way that the ruling in Herring would be dispositive in this case, however, is if the Supreme Court rules in Herring that Whiteley has been overruled. And I don't believe either of the parties take that position. I looked at the government's brief in Herring, and the government's position is that Whiteley is distinguishable. And these are two very different types of cases. Whiteley is a case in which an officer made a statement to a magistrate that he had probable cause to believe that someone had committed a crime. He didn't provide any information whatsoever to the magistrate. All he said was, I believe that this individual committed a burglary. He received an arrest warrant, and he placed that arrest warrant into a statewide bulletin. Other officers acting based on this bulletin arrested the individual. And the Supreme Court held that that arrest was not valid because the individual officer who placed that information into the bulletin did not have probable cause. And the fact that the officer that performed the arrest didn't know that the individual officer didn't have probable cause was not relevant. And so I think that the only way that Herring can become dispositive in this case is if the Supreme Court overrules Whiteley. That may be, but we're really not dealing necessarily with issues of being dispositive. It may be highly informative. It's possible, yes. And, you know, we have a situation here in which an officer placed a report of the vehicle being stolen, which at least as I read it was just his notion of what being stolen amounts to in the situation that you've talked about when somebody has made payments for a number of months and then defaulted after that. If the Court is asking whether I would oppose the Court deferring submission until a Supreme Court rule is in Herring. Not necessarily deferring submission. I'm sure we all want to hear from both of you. It's simply a matter of whether it makes some sense to at least defer ultimate decision perhaps until we hear what the Supreme Court has to say. It was argued after all second day of the term. Yes. And I expect that it will be relevant to this case. Okay. The officer put into the stolen vehicle report that this was part of a fraudulent scheme, that he had gotten the car through misstatements or through fraud. And as Judge Callahan was indicating, it was part of an overall scheme to obtain these vehicles. Why doesn't the officer's knowledge of this fraudulent scheme provide sufficient probable cause to at least impound the vehicle that's listed on the stolen vehicle report? I don't think that this vehicle was actually part of his scheme. And the reason I say that is that he purchased this vehicle in December of 2000. He made a bona fide down payment. He paid $3,000 down. He made seven months' leave. You may not, you would argue that, but you still have the facts in terms of if we're talking about, you know, probable cause at that point. I mean, not, if that were that, in and of itself, you'd have a stronger argument. But then you add the camper. Then you add the six vehicles. I mean, and these are all things that come directly back to him. And also, I believe the car doesn't have a license plate on it, too, right? Right. And then they run it and, you know, so, you know, he's got, you know, there's, you can say maybe it's all smoke and there's not fire, but there's a lot of smoke. I think we're blurring, though, a little bit the issue of standing and probable cause. If we're talking about probable cause, I don't think that the fact that it didn't have a license plate could have given the original officer who provided the information probable cause to believe it was stolen. The fact of the matter is it was not stolen. It doesn't have to be stolen. It just has to be evidence of a crime. So Bean, this Officer Bean, has investigated the six motorcycles that were obtained fraudulently. The camper top, this car, puts in a report about, and says in the note, it's fraudulent. It was obtained fraudulently. And so it seems under our probable cause standard, that would be enough probable cause at least to impound the vehicle. Why isn't that the case? I mean, I don't think we even have to get to standing. It doesn't seem to me that it's probable cause because the government has blurred the issue. He made a false statement. But he made that false statement to GMAC, and GMAC doesn't consider this car stolen. GMAC considers it in default, in breach of contract. The government argues that, no, he stole the car from Thorson GMC, and then later on GMAC was involved. But that's not what the facts of this case are. The facts of this case are that he purchased the car with financing from GMAC. And at the time that he purchased the car, he made a down payment, and he made seven subsequent payments. So to say that he defrauded, first of all, the government isn't even trying to attempt to establish that he defrauded GMAC. And even if he had, the vehicle would not be evidence of a crime. If he defrauded GMAC, what he stole was credit. He didn't steal a car. To say that he stole the car is to say that someone, for instance, let's say Mr. Noster bought my house. And in buying my house, he provided a significant down payment. And he told the mortgage company, this down payment is a gift to me, and I don't need to pay it back to anyone. But in reality, his parents loaned him the money. That would be a material lie on his mortgage application. But it wouldn't mean that he had stolen my house. And it wouldn't make my house evidence of any kind of crime. What he would have stolen was credit from the mortgage company. Similarly here, what he stole, if anything, was credit from GMAC. He didn't steal a truck, and the truck wasn't evidence of any kind of crime. I want to get back to the six options. You're actually in overtime at this point, but we're interested in this issue. If the panel doesn't have any more questions, I'm going to ask you to sit down, but I'm going to give you two minutes for rebuttal. Thank you. Good morning. Good morning. May it please the Court, Daniel Levin on behalf of the government. I'd like to start with standing and then turn to the stolen vehicle report. With respect to standing, the Court's right, there's a subjective component and an objective component to the legitimate expectation of privacy. And the District Court here actually did find that there was no subjective expectation based on the cumulative factors that the Court mentioned just a moment ago. You don't think that living in the vehicle creates some insight into subjective expectation? I'm sure it creates some insight into it, but the fact of the matter is he knew that he made this false statement. He knew he hadn't paid either for the vehicle or the camper in a year approximately, hadn't made any payments. He's got the dealer plates on, the VIN is covered. What does that have to do with his state of mind in terms of an expectation in connection with the vehicle? The knowledge that he's engaged in a lot of unsavory activity doesn't mean that, you know, what do they say? A man's home is his castle, I suppose. A man's camper might be his castle as well. But he knows that it's subject to repossession at this point at any time. But it wasn't repossessed. No, no, it hasn't been repossessed yet. No, that's, of course. But he's essentially staying one step ahead of the repo company. And the District Court made findings here that in fact he'd taken some steps to avoid detection. He'd put on those applications. Because he wanted to have privacy in the vehicle, right? Well, but that's true. That's true of anyone who's in even just an outright stolen vehicle, trigger the lock kind of thing. Of course, you want to have privacy. The question is, and maybe this just doubles back into the reasonable expectation. Isn't that what subjective means, what you have in mind? Well, it's what I think it means, not what he hopes to have. Of course, he would like to have privacy in the vehicle. Anyone, even a thief, wants to have privacy. The question is, does he really think that he is safe in the vehicle? Does he think that it's not going to be picked up at any moment? And I think it's just not clear that he does think that, particularly when he's given this address that he's never had. It's his father's address. He doesn't seem to be around when the repo company shows up and so forth. So I'm not sure that it's just so clear that he subjectively really believes that he is necessarily safe and private in this vehicle. It just goes back, though. Maybe this is just a way of getting back to the legitimate expectation of privacy. The question is, should society recognize here in this situation where you have- That's more of the objective. Maybe not more of the objective. Maybe that's just a simpler way to look at it, that he made a false statement. And it's an important false statement. He lies about he has a job, actually been fired from the job. He says he makes $85,000 a year. In fact, he doesn't make anything. And in fact, he later says in the pre-sentence report, well, he made about $40,000 a year. So he's doubled his income. He's a bad guy. He makes a few payments. Then he stops. He hasn't made any payments now for about a year. He knows it's subject to repossession. They're sending notices. They're taking all these steps. They're taking the obvious steps. You hire a repo company. You have the repo company actually out there actively looking. They're doing all those things that society would sort of expect of a financing company that's aggressively trying to get the camper and the car back. And I think at that point, under Kunag and Bautista and Doré in this court's cases, at that point, the legitimate expectation of privacy has really evaporated. I mean, clearly, we don't want – I think it would be really difficult to have a rule that anyone that defaults on a payment loses their expectation both objectively and subjectively. I agree with that, Your Honor. I mean, that's – This is not a case. That would be an en banc call, and it would be a reversal by the Supreme Court in 0 to 103 seconds. And that's not the government's position. The government's position here is not that someone who goes into default and misses three payments on their car or on their home gives up a legitimate expectation of privacy. Of course not, particularly with respect to home where the expectation of privacy is so much higher to begin with. It would take quite a bit, I think, to lose that legitimate expectation of privacy. But here it's not just that he's missed a few payments. We have the initial false statement. We have this whole pattern of fraud. We have the fact that he seems to never be around at his home address. We have a whole host of factors, and it's always the totality of the circumstances. It's always a reasonable thing. On the pattern, are you including the six motorcycles and the camper as part of the pattern? Well, I think that does go in because I think it goes to show that this initial misstatement, it's evidence that this initial misstatement wasn't just a mistake. It wasn't just a, no, I think on its face it's hard to justify as a mistake, but I think it clearly comes back and says, no, this is someone who commits fraud. And I think this dovetails into the stolen police report because it's an indication that this is the M.O., essentially. This is make a false statement on a loan application, tell them what they want to hear. You get the financing. You get what you want. This is not your classic stolen car report, though, and the officers, so it's in the database. They have it as a stolen car. Do you think that herring possibly has implications here? It may. It certainly, it obviously is in the same sort of domain. It certainly may shed some light. It may not. I don't have any objection to the panel waiting to hear what it has to say. It may avoid a later petition for panel rehearing or something. I certainly think it might be a reasonable course to take. Now, in herring there was a clerical error. In this case, nobody's saying it was a clerical error. I mean, he filled out the report, and he indicated that the basis of the report was a suspicion of fraud. Does the fraud alone or does his suspicion of fraud give the police probable cause in connection with the others, or is it just a false report? I mean, that seems to me very different in the herring case. Well, I think there has to be, he has to have reliable information. That's the California statute. If there's reliable information the car's stolen, he, in fact, is required to put it into the database. Do you have any cases that call this kind of activity theft? Well, it's theft by false pretenses under California law. Really? Really, under the circumstance that we're involved here? Well, that's what the probable cause would be for. There has to be a material misstatement. It has to be relied on, and someone has to part with property in reliance on the false statement. When did this theft take place? I think it took place at the dealership. I mean, the theft is… The theft took place at the dealership, even though thereafter, having made a substantial down payment, he continued to make payments for a period of months. You're telescoping that? Well, I think what happened afterwards is really evidence of what was going on in the dealership. Now, he does make some payments. He does make some payments, and ultimately, I think all that is going to go to, did he have intent? And that's going to be a jury question, ultimately. This would be an argument case in front of a jury. Did he have that fraudulent intent when he made that false statement? And I'll grant you, it's an argument case, and maybe a jury would decide he didn't. Maybe it would decide, I think the state would argue, look, they would bring in the later acts. They come in as MO, modus operandi type acts. He's someone who engages in fraud, that he meant to make that false statement, that it was intentional. And the defendant would obviously argue, no, I didn't intend it to fraud the dealership. Look, I made these payments. That doesn't go to whether he has probable cause. That just goes to ultimately whether there would be a conviction in this case. The question is, is there probable cause to put this? Is there reliable information? Is there a reason to think this might be theft by false pretences? And here, we have a misstatement about the fundamental issue about granting the credit. Does he have any way of paying it back? And, yes, he makes a few thousand dollar down payments, and he makes, I think, seven payments out of 72. That goes to intent, and that's an argument question, but I don't think that goes necessarily to the probable cause. If the officer did have probable cause, let's just say that he had enough to think that, under our standard, to think there was a crime being committed, would that be sufficient to allow the police to impound the vehicle when they spotted it and identified it as the vehicle that was the subject of the police report? It would be, because any vehicle in which there's a police report in the system can be impounded under California law, and that's the statute. I think it's Vehicle Code 26651, and that basically gives the officers the authority to make that impound based on the report. You're talking about the second officer? I'm talking about, at this point, the LAPD officers who arrive, who are initially on the scene, Officers Murphy, who rely on the stolen vehicle report for the impound, and I think the stolen vehicle report, California law says you can impound the car, and at that point, they can do an inventory under LAPD procedures. They start that inventory, and, of course, they find the incendiary device, and at that point, there's probable cause under the automobile exception to go and search the vehicle. So it's a series of steps. They're justified to be in there on the inventory search. They find the device. From that point, there's probable cause, and now we're just under the automobile exception to search the rest of the vehicle. So because the second officer, the one who actually took the step, could reasonably rely upon the existence of the stolen vehicle report, we then get back to, I guess, the legitimacy of the stolen vehicle report and, indeed, the herring situation. That's where it would arise. The question would be, there's no question when Officer Murphy arrives. I can answer that. Thank you. I'll unleash you when we want to. Thank you, Your Honor. When Officer Murphy arrives, he calls up on the radio, gets the stolen vehicle report, and that does bring us to the herring question. So the question is, if there's a problem with the stolen vehicle report, what is its effect, and what's the effect in the interchange there where there's that intermediary? So I think herring may or may not have anything to say about this, but it certainly may. I think that's a fair statement. Any other questions? All right. Thank you for your argument. Thank you. Just briefly, it seems that the panel is much more interested in the probable cause issue than the standing issue, so I want to focus very briefly on that issue. I think that the fact of the matter here is that Detective Bean was engaged in conduct that this court wants to deter. He did not report this vehicle stolen because somebody told him it was stolen. In fact, what he did was he had reports that other vehicles were stolen, an arrest warrant had been issued about a year before, and Mr. Noster had not been found. He wanted to find Mr. Noster. So what did he do? He tried to find out, well, what does Mr. Noster drive? We know he's not driving around in these off-road vehicles. So what does he drive? They found out, he found out that what he drives is this car, and it hasn't been registered for, you know, however long, so maybe there's a problem with that. He goes in and he creates a problem with this car. But what does he put on the stolen vehicle report? He doesn't even put in the database who the victim is. He puts himself as the victim. How does he create a problem with the car? Well, the problem isn't with the car. Mr. Levin made an argument that this is a jury question, whether or not he intended to defraud, but it's not even really a jury question because if he defrauded anyone, he defrauded the finance company. He did not defraud the dealership. So even if he had defrauded the finance company, the car was not stolen. Like I said earlier, if somebody defrauds a mortgage company, it doesn't mean that the house is stolen. What's stolen is the credit. So Detective Bean created a problem with this car. There was no problem with this car. The problem was with the credit. He went to Thorson GMC and had them report the car stolen when the car could not have been stolen from Thorson GMC. If it was stolen at all, it was stolen from GMAC. And GMAC didn't sell him the car. GMAC sold him credit. So Detective Bean created a problem with this car. And if you look at the return on the stolen vehicle report, it's at page ER107, he doesn't even list the victim as GMAC or GMC. He lists himself as the victim. And he says on the report, you know, if you find this car, stake and notify me immediately. He wants to be notified immediately because he wants to find the car, because he wants to find Nostra, because Nostra is out there committing all these other crimes. But these other crimes do not involve the truck. So in terms of the deterrence principle, deterrence is absolutely necessary in this case because if it were okay for people to report cars stolen, that weren't in fact stolen just because you wanted to find the individual who drives the car, then police officers would have the incentive to do this all the time. This is simply not of a case where he was trying to find a stolen vehicle. He was trying to find a person. And he figured out what kind of car this person drove. And he figured out that if he found the car, he would find the person. It's really creative, inventive, effective police work. It's just not legal.  Thank you for your argument. Thank you both for your argument. You both did an excellent job, and it was helpful to the court. This matter will now stand submitted.
judges: Callahan, Ikuta, Shadur